617 So.2d 1115 (1993)
STATE of Florida, Appellant,
v.
Christopher N. SARGENT, Appellee.
No. 92-92.
District Court of Appeal of Florida, Fifth District.
May 7, 1993.
*1116 Robert A. Butterworth, Attorney General, Tallahassee, and Nancy Ryan, Asst. Atty. Gen., Daytona Beach, for appellant.
James B. Gibson, Public Defender, and Sophia B. Ehringer, Asst. Public Defender, Daytona Beach, for appellee.
DIAMANTIS, Judge.
The state appeals the order entered by the trial court dismissing the charges of possession of lysergic acid diethylamide (LSD)[1] and possession of marijuana[2] which were filed against appellee, Christopher Sargent. The trial court dismissed these charges because it concluded that the state's use of a confidential informant (CI) to help establish its case against Sargent either violated Sargent's due process rights or constituted objective entrapment. We disagree with the trial court's conclusion and, therefore, reverse the order of dismissal and remand this cause for further proceedings.
The CI involved in this case had been arrested on a charge of selling LSD after a female confidential informant had attempted to purchase some marijuana from the CI at the CI's residence. The CI advised her that he did not have any marijuana but that he could sell her LSD. After his arrest on the charge of selling LSD, the CI was offered a substantial assistance agreement because the Osceola County Sheriff's Department was trying to find out from whom the CI was obtaining his LSD and, ultimately, where the LSD laboratory was located. Specifically, the sheriff's department offered to drop the charges against the CI if he helped to establish three felony cases against persons known to deal in drugs. The CI was not given any money as part of the agreement or required to testify at trial. The CI was instructed to abide by several guidelines, including the instruction not to engage in any "buys" without approval. The sheriff's department agreed to make every reasonable effort to keep the identity of the CI confidential but informed the CI that his identity might be disclosed and that he might be ordered to testify in court.
The CI provided the sheriff's department with a list of four or five names, including the name "Chris", who lived on Kentucky Avenue in St. Cloud.[3] On November 15, 1990, the CI informed the sheriff's department that appellee, Christopher Sargent, had called twice offering to sell marijuana. Sargent testified that the CI, who was known to him for the past two years as Mike Diaz, called him first and asked where he could purchase marijuana and that Sargent then called Diaz back with an offer to sell him an ounce of marijuana. Sargent also testified that in the last two years he had sold marijuana to Diaz approximately ten times, that they had smoked marijuana together, and that Diaz had sold LSD to Sargent in the past. That night officers of the sheriff's department conducted surveillance of a prearranged meeting between Diaz and Sargent in a parking lot. Before any drugs changed hands, the officers arrested Sargent and a woman accompanying him. The officers found one ounce of marijuana and seven "hits" of LSD in the woman's purse. Sargent testified that he had bought the seven "hits" of LSD from Diaz a month earlier.
Under State v. Hunter, 586 So.2d 319, 320-321 (Fla. 1991), the substantial assistance agreement in this case does not violate the due process rights of Sargent because Diaz did not receive any remuneration for helping the sheriff's department establish the three felony drug cases and the substantial assistance agreement did not require Diaz to testify. See also State v. Ramos, 608 So.2d 830 (Fla. 3d DCA 1992), rev. granted, No. 81,042, 617 So.2d 321 *1117 (Fla. Mar. 19, 1993); Pidkameny v. State, 569 So.2d 908 (Fla. 5th DCA 1990).
The more difficult question involves the issue of entrapment. In Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985), the Florida Supreme Court outlined the defenses of entrapment, explaining that a defendant may raise both a subjective entrapment defense and an objective entrapment defense. The objective entrapment defense focuses on the police conduct leading up to defendant's arrest. The court ruled that the determination as to whether police conduct constitutes objective entrapment must be made by reference to the following test:
Entrapment has not occurred as a matter of law where police activity (1) has as its end the interruption of a specific ongoing criminal activity; and (2) utilizes means reasonably tailored to apprehend those involved in the ongoing criminal activity.
Cruz, 465 So.2d at 522. The first prong of the test is aimed at discouraging the police from manufacturing new crimes where, but for the activities of the police, no crime would exist. The second prong of the test is concerned with preventing the police from inducing someone into committing a crime, either by persuading the person that the conduct is not illegal or by using methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it. Cruz, 465 So.2d at 521-522. If the police conduct was such as to constitute entrapment, then the trial court is authorized to dismiss the charges as a matter of law.
In Cruz, the court also discussed the subjective entrapment defense, explaining that the subjective entrapment defense focuses on whether the defendant was predisposed to commit a particular offense. The existence of subjective entrapment is a question of fact for the jury. Cruz, 465 So.2d at 519. The defense of subjective entrapment may be raised at trial even though the trial court has ruled previously as a matter of law that the police conduct did not constitute objective entrapment.
Subsequent to Cruz, the legislature enacted section 777.201, effective as to offenses committed on or after October 1, 1987, which generally codifies the defense of entrapment without distinguishing between the theories of objective and subjective entrapment:
777.201 Entrapment. 
(1) A law enforcement officer, a person engaged in cooperation with a law enforcement officer, or a person acting as an agent of a law enforcement officer perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, he induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.
(2) A person prosecuted for a crime shall be acquitted if he proves by a preponderance of the evidence that his criminal conduct occurred as a result of an entrapment. The issue of entrapment shall be tried by the trier of fact.
§ 777.201, Fla. Stat. (1987).
In Herrera v. State, 594 So.2d 275 (Fla. 1992), the court upheld the constitutionality of section 777.201(2) and the corresponding criminal jury instruction 3.04(c)(2), rejecting the argument that the statute and jury instruction violate federal and state constitutional due process provisions. While Herrera, in several of its passages, refers to the "predisposition" of a defendant to commit a crime, which historically has been language used in defining subjective entrapment, the majority opinion does not discuss whether section 777.201 includes both the objective and subjective entrapment defenses. See Cruz, 465 So.2d at 519-521. In this regard, of significant import is the discussion in Cruz concerning the New Jersey entrapment statute:
Subsequent to the [State v. Molnar, 81 N.J. 475, 410 A.2d 37 (1980)] decision, the New Jersey court held that statutory law had superseded the common law, placing the decision on both the subjective *1118 and objective aspects of entrapment in the hands of the trier of fact. State v. Rockholt, 96 N.J. 570, 476 A.2d 1236 (1984). Even though the New Jersey court concluded that its common law paradigm had been supplanted, it noted that there may still be situations where the government conduct is so outrageous that constitutional due process requires dismissal. See discussion at note 1, supra. There is no parallel to the New Jersey legislative action in Florida.
Cruz, 465 So.2d at 521 n. 3. Because the New Jersey entrapment statute closely parallels the Florida entrapment statute, section 777.201,[4] it appears that, when presented with the issue, the Florida Supreme Court will adopt the reasoning of the New Jersey court and rule that the enactment of section 777.201 operates to supersede the decision in Cruz and places the decision on both the subjective and objective aspects of entrapment in the hands of the trier of fact except in situations where the government conduct is so outrageous that constitutional due process requires dismissal.
Although our district courts of appeal have not specifically addressed this related issue, the courts have addressed the current issue of the continued viability of the Cruz objective entrapment defense. In this regard our courts are split, with the first district holding that the entrapment statute abolishes the objective entrapment defense. See Gonzalez v. State, 571 So.2d 1346 (Fla. 3rd DCA 1990), rev. denied, 584 So.2d 998 (Fla. 1991). See also State v. Thinh Thien Pham, 595 So.2d 85 (Fla. 1st DCA 1992) (question certified); Simmons v. State, 590 So.2d 442 (Fla. 1st DCA 1991) (question certified); State v. Munoz, 586 So.2d 515 (Fla. 1st DCA 1991), juris. accepted, 598 So.2d 77 (Fla. 1992). In contrast, this district, as well as the second, third, and fourth districts have either specifically or impliedly recognized that the objective entrapment defense defined in Cruz is still viable and is a matter which the trial court may decide in response to a pretrial motion to dismiss the charges. This view is primarily based on the supreme court's decision in State v. Hunter, 586 So.2d 319 (Fla. 1991).[5]See Jeralds v. State, 603 So.2d 643 (Fla. 5th DCA), juris. accepted, 613 So.2d 5 (Fla. 1992); Ramos v. State, 608 So.2d 830 (Fla. 3d DCA 1992), rev. granted, No. 81,042, 617 So.2d 321 (Fla. Mar. 19, 1993); Lewis v. State, 597 So.2d 842 (Fla. 3d DCA), juris. accepted, 605 So.2d 1266 (Fla. 1992); Krajewski v. State, 597 So.2d 814 (Fla. 4th DCA), juris. accepted, 605 So.2d 1264 (Fla. 1992); Bowser v. State, 555 So.2d 879 (Fla. 2d DCA 1989). See also State v. Adams, 600 So.2d 1302 (Fla. 5th DCA), juris. accepted, 613 So.2d 1 (Fla. *1119 1992); Smith v. State, 575 So.2d 776 (Fla. 5th DCA 1991); State v. Purvis, 560 So.2d 1296 (Fla. 5th DCA 1990).
Applying the objective entrapment analysis set forth in Cruz, we conclude that the police conduct in this case did not constitute objective entrapment.[6] Under Cruz, the threshold question is whether the defendant was involved in specific ongoing criminal activity. See Cruz, 465 So.2d at 522. Here, Sargent specifically testified that Diaz had purchased marijuana from him at least ten times in the past and that they had smoked marijuana together. Sargent also testified that he had bought LSD from Diaz in the past and that the LSD that he possessed when arrested was purchased around October 15, 1990, two weeks before Diaz became a confidential informant. Accordingly, by his own testimony, Sargent established that a specific ongoing criminal activity was occurring between himself and Diaz. See State v. Purvis, 560 So.2d 1296 (Fla. 5th DCA 1990); Taffer v. State, 504 So.2d 436 (Fla. 2d DCA), cause dismissed, 506 So.2d 1043 (Fla. 1987). Compare State v. Ramos, 608 So.2d 830 (Fla. 3d DCA 1992), rev. granted, No. 81,042, 617 So.2d 321 (Fla. Mar. 19, 1993); Pezzella v. State, 513 So.2d 1328 (Fla. 3d DCA 1987), rev. denied, 523 So.2d 578 (Fla. 1988).
We further conclude that the sheriff's department utilized a means reasonably tailored to apprehend those involved in the ongoing criminal activity. See Cruz, 465 So.2d at 522. Here, Diaz agreed to "make" three cases and, in exchange, the sheriff's department agreed to drop the charges which were pending against him. Diaz was not given any money as part of the agreement, and the evidence establishes that Diaz was asked first to list those persons he knew who were engaging in drug sales and then was instructed to abide by several guidelines, including the instruction not to engage in any "buys" without approval.
Because we conclude that the police conduct in this case did not violate Sargent's due process rights and did not constitute objective entrapment, we must reverse the order of the trial court and remand for further proceedings consistent with this opinion. Further, because of the great public importance of the impact of the enactment of the entrapment statute upon the decision in Cruz, we certify the following question:
WHETHER SECTION 777.201, FLORIDA STATUTES (1987), SUPERSEDES THE DECISION IN CRUZ AND PLACES THE DECISION ON BOTH THE SUBJECTIVE AND OBJECTIVE ASPECTS OF ENTRAPMENT IN THE HANDS OF THE TRIER OF FACT EXCEPT IN SITUATIONS WHERE THE GOVERNMENT CONDUCT IS SO OUTRAGEOUS THAT CONSTITUTIONAL DUE PROCESS REQUIRES DISMISSAL.
REVERSED and REMANDED.
W. SHARP and THOMPSON, JJ., concur.
NOTES
[1] §§ 893.13(1)(a)2, 893.03(1)(c), Fla. Stat. (1989).
[2] §§ 893.03(1)(c), 893.13(1)(f), Fla. Stat. (1989).
[3] Sargent's address at the time of his arrest was 823 Kentucky Avenue, St. Cloud, Florida.
[4] The New Jersey statute, N.J.S.A. 2C:2-12, which became effective in 1979, provides in pertinent part:

a. A public law enforcement official or a person engaged in cooperation with such an official or one acting as an agent of a public law enforcement official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages and, as a direct result, causes another person to engage in conduct constituting such offense by either:
* * * * * *
(2) Employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.
b. Except as provided in subsection c. of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment. The issue of entrapment shall be tried by the trier of fact.
c. The defense afforded by this section is unavailable when causing or threatening bodily injury is an element of the offense charged and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.
State v. Rockholt, 476 A.2d at 1239 (footnote omitted).
[5] Such reliance appears to be misplaced because apparently the crimes in Hunter occurred prior to the enactment of section 777.201. The Florida Supreme Court's opinion in State v. Hunter, 586 So.2d 319, 320 (Fla. 1991), and the fourth district's opinion, Hunter v. State, 531 So.2d 239, 240 (Fla. 4th DCA 1988), both indicate that the substantial assistance agreement which led to the arrest of the defendants was rendered pursuant to section 893.135(3), Florida Statutes (1985). More importantly, the fourth district opinion indicates 1986 appellate case numbers X-XX-XXXX and X-XX-XXXX. Consequently, we have reservations concerning whether Hunter should be considered to be a post-statutory case.
[6] In reaching this decision we recognize that, because this is a post-statutory case, objective entrapment is, in all probability, a question for the fact-finder to determine.